UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JESSE GOODMAN,                          :
                                        :
            Plaintiff,                  :          Civil No. 17-2427 (KM) (JBC)
                                        :
      v.                                :
                                        :
GARY LANIGAN, et al.,                   :          OPINION
                                        :
            Defendants.                 :
                                        :

**KEVIN MCNULTY, U.S.D.J.**

## I.    INTRODUCTION

The Plaintiff, Jesse Goodman, is currently civilly committed to the East Jersey State Prison Special Treatment Unit (STU) in Avenel, New Jersey, pursuant to the New Jersey Sexually Violent Predator Act. N.J. Stat. Ann. § 30:4-27.24 et seq. The plaintiff is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983.

At this time, this Court must screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief can be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the following reasons, the claim against John Doe #2 for excessive force and the claim against John Doe #3 for conducting an illegal strip search will be permitted to proceed. All claims against Gary Lanigan, Sherry Yates, Ryan O'Day, and John Doe #1 will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

## II.    FACTUAL BACKGROUND

The allegations of the complaint will be construed as true for purposes of this screening opinion. The complaint names six defendants: (1) Gary Lanigan, Commissioner of the New Jersey

Department of Corrections; (2) Sherry Yates, Administrator of the East Jersey State Prison Special Treatment Unit; (3) Ryan O'Day, Assistant Administrator of the East Jersey State Prison Special Treatment Unit; (4) John Doe #1, Special Operations Group Supervisor; (5) John Doe #2, Special Operations Group Officer; and (6) John Doe #3, Special Operations Group Officer.  Plaintiff is suing each of these defendants in their individual capacities.

On January 4, 2017 at 3:30 a.m., Plaintiff was awoken from his sleep when officers from the Special Operations Group (S.O.G.) stormed into the dorm in which Plaintiff is housed at the STU.  The officers screamed at the residents, "Get on your stomachs, faces down towards the wall, hands behind your heads!" (Dkt. No. 1 at pg. 6).  Plaintiff alleges that the officers were cursing at the residents, harassing them, and threatening them with physical violence.  Plaintiff states that as soon as he awoke and lifted his head to see what was occurring, one officer, John Doe #2, was screaming into his ear, and forcefully pushed Plaintiff's head down into his bed.  John Doe #2 then proceeded to aggressively "yank" both of Plaintiff's arms behind his back and then forced Plaintiff's hands over his head.  John Doe #2 yelled at Plaintiff to keep his hands on his head in what Plaintiff calls a "painful, stressful" manner for a "long period of time." (Dkt. No. 1 at pg. 3).

Some time later, John Doe #2 returned to Plaintiff's dorm area and yelled at Plaintiff to get out of his bed and line up behind the other STU residents for a strip search.  Plaintiff states that he was forced to stand in this line that was "so tight and without proper space in between persons that it was embarrassing." (Dkt. No. 1 at pg. 1).  Plaintiff and the other residents were then taken to the STU's dining area, where they were compelled by direct orders, demeaning comments, and threats of physical violence by S.O.G. Officer John Doe #3 to strip.  Plaintiff alleges that he was forced to "strip, touch, and expose" himself in front of S.O.G. officers and the other residents. Plaintiff asserts that John Doe #3 at no time had probable cause to conduct this strip search.  After

the strip search was over, Plaintiff states, he and the other residents were taken to another building on the STU compound where they were forced to remain for hours against their will. Plaintiff claims that this confinement deprived him of a good night's sleep and a healthy breakfast. Just after 9:00 a.m., Plaintiff and the other residents were permitted to return to their dorms.

Plaintiff states that the events of January 4, 2017 have caused him to have ongoing flashbacks to a traumatic brain injury he suffered from a car accident in 1997. Plaintiff alleges that he has suffered mentally and emotionally and that the incident in 2017 brought him back to "that other time of great and emotional suffering." (Dkt. No. 1 at pg. 4). Plaintiff has also alleged that as a result of the January 4, 2017 incident, he has suffered from difficulty sleeping, recurring headaches, and concentrating in his therapy groups. Plaintiff remains in daily fear that the events of January 4, 2017, will recur.

In his Complaint, Plaintiff claims that the January 2017 incident violated his federal and New Jersey state constitutional rights. He is now seeking monetary relief in the amount of $500,000 for the physical, mental, and emotional trauma he suffered from the incident, as well as injunctive relief in the form of a prohibition against the S.O.G. officers' ever again using the "prison-type riot tactics" they used on January 4, 2017 in the STU. (Dkt. No. 1 at pg. 4).

Plaintiff is specifically suing six individuals. He sues Gary Lanigan as the individual in charge of the totality of daily operations of the New Jersey Department of Corrections, the training of the officers, and the promulgation of the rules and regulations for the New Jersey Department of Corrections. He sues Sherry Yates for her role in overseeing the operations at the STU, in training of the officers at the STU, and in promulgating the rules and regulations for the STU, as well as overseeing the safety and special needs of the residents located there. He sues Ryan O'Day as the individual responsible for seeing that the officers at the STU are properly trained to deal

with the special needs and safety of the residents, promulgating the rules and regulations at the STU, and overseeing the daily operations. He sues John Doe #1 as the individual responsible for the daily operations of the S.O.G., promulgation of the rules and procedures for the S.O.G., and for the training of the S.O.G. officers. He sues John Doe #2 as the individual who physically and verbally assaulted him and who was directly responsible for holding Plaintiff "hostage" in a building on the STU compound for hours, thereby depriving Plaintiff of "a good night's sleep and a healthy breakfast." (Dkt. No. 1 at pg. 3). He sues John Doe #3 for conducting the "illegal strip search" of Plaintiff. Finally, he sues all six defendants for creating a "hostile restrictive environment." (Dkt. No. 1 at pg. 2).

### III.    LEGAL STANDARDS

Under the Prisoner Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated

4

by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## IV.    DISCUSSION

As noted above, Plaintiff's Complaint raises several alleged violations of his federal and state constitutional rights in connection with his civil commitment in the STU. Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983. Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, a claim for relief under § 1983 requires first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under the color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Akins*, 487 U.S. 42, 48 (1988).

As to Plaintiff's state claims, "The [New Jersey Civil Rights Act] NJCRA was modeled after 42 U.S.C. § 1983 and '[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.'" *Coles v. Carlini*, 162 F. Supp. 3d 380, 404-05 (D.N.J. 2015) (quoting *Chapman v. New Jersey*, No. 08-4130, 2009 U.S. Dist. LEXIS 75720, at *3 (D.N.J. Aug. 25, 2009)). Accordingly, I will construe the NJCRA claims as analogous to their federal counterparts.

A. Physical Assault and Excessive Force

Plaintiff's first contention is that John Doe #2 used excessive force and physically assaulted Plaintiff when he pushed Plaintiff's head into his bed, yanked Plaintiff's arms behind his back and on top of his head, and forced Plaintiff to stay in that position for an extended period of time. Generally, individuals who are civilly committed are treated similarly to pre-trial detainees and are entitled to "more considerate treatment and conditions of confinement" than those whose are convicted and imprisoned for punishment. *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982); *see also Aruanna v. Johnson*, 683 F. App'x 172, 174-75 (3d Cir. 2017) (extending same standard to individuals civilly-committed as sexually violent predators). Accordingly, since Plaintiff is a civilly committed Sexually Violent Predator ("SVP"), his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies to convicted prisoners. *See Rivera v.*

6

*Marcoantonio*, 153 F.App'x 857, 858 n.1 (3d Cir. 2005) (citing *Youngberg v. Romeo*, 457 U.S.
307, 315-16 (1982)).

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court set forth the appropriate
standard for analyzing a Fourteenth Amendment Due Process claim. In *Bell*, the Supreme Court
held, in relevant part:

> A court must decide whether the disability is imposed for the
> purpose of punishment or whether it is but an incident of some other
> legitimate governmental purpose. Absent a showing of an expressed
> intent to punish on the part of detention facility officials, that
> determination generally will turn on "whether an alternative purpose
> to which [the restriction] may rationally be connected is assignable
> for it, and whether it appears excessive in relation to the alternative
> purpose assigned [to it]." Thus, if a particular condition or restriction
> of pretrial detention is reasonably related to a legitimate
> governmental objective, it does not, without more, amount to
> "punishment." Conversely, if a restriction or condition is not
> reasonably related to a legitimate goal-if it is arbitrary or
> purposeless-a court permissibly may infer that the purpose of the
> governmental action is punishment that may not constitutionally be
> inflicted upon detainees qua detainees.
> [. . .]
> Restraints that are reasonably related to the institution's interest in
> maintaining jail security do not, without more, constitute
> unconstitutional punishment, even if they are discomforting and are
> restrictions that the detainee would not have experience had he been
> released while awaiting trial.

*Bell,* 441 U.S. at 538-40 (internal citations omitted).

Thus, to successfully assert an excessive force claim, Plaintiff must demonstrate that the
force used by John Doe #2 amounted to a wanton infliction of punishment, as opposed to restraint
rationally related to exercising control. *See Fuentes v. Wagner*, 206 F.3d 335, 342-45 (3d Cir.
2000). While officers may use force to preserve order and maintain the safety of other inmates
and staff, officers may not use gratuitous force against an inmate who has been subdued. *See*

*Bethune v. Cnty. of Cape May*, No. 08-5738, 2011 WL 2037627, at \*9 (D.N.J. May 20, 2011)

(citing *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009)).

Construing all inferences in Plaintiff's favor, I find that Plaintiff has alleged a facially

plausible claim of uses of excessive force against John Doe #2, both as to the manner in which and

the purpose for which the force was applied.  Plaintiff does not allege that there were any incidents

or unit disturbances that warranted John Doe #2's forcefully pushing Plaintiff's head into his bed,

pulling Plaintiff's arms behind his back, and forcing Plaintiff to keep his hands on his head in an

allegedly painful manner, all while John Doe #2 continued to yell at and verbally threaten Plaintiff.

Therefore, I will allow Plaintiff's excessive force claim to proceed at this time against John Doe

#2 in his personal capacity.

B. Illegal Strip Search

Plaintiff next alleges that John Doe #3 conducted an illegal strip search of Plaintiff without

probable cause by compelling Plaintiff to strip, touch, and expose himself in front of John Doe #3

and numerous other STU residents.  Plaintiff states that John Doe #3 forced him to strip by way of

"direct orders, verbal threats, and demeaning comments, as well as under the threat of physical

violence."  The Fourth Amendment of the Constitution protects individuals from unreasonable

searches and seizures.  U.S. Const. amend. XIV.  "The test of reasonableness under the Fourth

Amendment [. . .] requires a balancing of the need for the particular search against the invasion of

personal rights that the search entails.  Courts must consider the scope of the intrusion, the manner

in which it is conducted, the justification for initiating it, and the place in which it is conducted."

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (alteration in original).

Involuntarily committed patients and SVPs, like pretrial detainees, are entitled to some

protection under the Fourth Amendment, but they do not have an expectation of privacy equal to

8

an individual in society generally. *See Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009) (noting that pretrial detainees are kept in custody because there is cause to believe they are dangerous; similarly, commitment under Minnesota law as a sexually dangerous person requires a finding of dangerousness), *cert. denied*, 558 U.S. 972 (2009). In *Florence v. Board of Chosen Freeholders of County of Burlington*, 556 U.S. 318 (2012), the Supreme Court held that a visual body cavity search of all arriving detainees that were to be admitted to the general population, regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history was a reasonable strip search policy under the Fourth Amendment. *Id.* at 324. In dicta, the Court expressed concern about "officers engaging in intentional humiliation and other abusive practices," but the Court ultimately did not have to reach the issue in that case. *Id.* at 339 (citing *Hudson v. Palmer*, 468 U.S. 517, 528 (1984) ("[I]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society")).

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court acknowledged that "on occasion a security guard may conduct the search in an abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner." *Id.* at 560 (internal citations omitted). "[I]nmates maintain a reasonable expectation of privacy in their bodies, and an unreasonable search of the body may therefore be unconstitutional." *Russell v. City of Philadelphia*, 428 F. App'x 174, 178 (3d Cir. 2011) (per curiam) (citing *Bell*, 441 U.S. at 558-60); *Watson v. Sec. of Pennsylvania Dep't of Corr.*, 436 F. App'x 131, 136 (3d Cir. 2011) (per curiam) (strip search conducted in abusive fashion may violate Fourth Amendment). Further, in circumstances where strip searches have been conducted in plain view of other detainees, courts have been more reluctant to find that the search was reasonable. A court in this District has previously held that, "the wider an audience for a strip search, the more humiliating it becomes,

especially when the stripped individual is exposed to bystanders who do not share the searching officers' institutional need to the view [the detainee] unclothed." *Crump v. Passaic Cnty.*, 147 F.Supp. 3d 249, 256-57 (D.N.J. 2015) (quoting *Williams v. City of Cleveland*, 771 F.3d 945, 947 (6th Cir. 2014)).

Here, Plaintiff's allegation that John Doe #3 made demeaning comments and physically threatened him during a strip search performed in front of numerous other STU residents is sufficient to state a claim that the search was unreasonable in violation of the Fourth Amendment. Accordingly, this claim may proceed against John Doe #3 in his personal capacity.

C. Hostile Restrictive Environment

Plaintiff next claims, without more, that the defendants created a "hostile restrictive environment." It is unclear from this statement what claim, if any, defendant is attempting to raise. Federal Rule of Civil Procedure 8(a)(2) requires that plaintiffs set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." While this standard does not require detailed factual allegations, it does require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the very least, the complaint must "give the defendants fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted). Although courts are required to liberally construe pleadings drafted by *pro se* parties, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of a recognized cause of action. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

Here, Plaintiff has stated in unclear fashion that defendants created a "hostile restrictive environment." To the extent that Plaintiff may be trying to raise a more general conditions-of-

10

confinement claim, he has failed to do so with the specificity required for civil rights complaints, even those filed *pro se.*

D. "Failure To" Claims

Plaintiff's Complaint also makes several assertions regarding the responsibilities of defendants Gary Lanigan, Sherry Yates, Ryan O'Day, and John Doe #1.  I construe Plaintiff's Complaint as alleging that these four defendants failed to supervise and train the S.O.G. officers, and that these failures resulted in the actions that occurred on January 4, 2017.  To succeed on any failure to supervise/train claim, a plaintiff must demonstrate that a supervisor was deliberately indifferent to the plaintiff's constitutional rights.  *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

i.   Failure to Supervise

For a failure to supervise claim, deliberate indifference can be established where: 1) the supervisors had "contemporaneous knowledge of the offending incident or of a 'prior pattern of similar incidents,'" and 2) the supervisors' "action or inaction somehow communicated approval of the offending behavior."  *Tobin v. Badamo*, 78 F. App'x 217, 219 (3d Cir. 2003) (quoting *Montgomery v. De Simone*, 159, F.3d 120, 127 (3d Cir. 1998)).

Here, Plaintiff does not allege that defendants Gary Lanigan, Sherry Yates, Ryan O'Day, and John Doe #1 had contemporaneous knowledge of the events on January 4, 2017.  He does not assert that any of those defendants were present in the STU that day, or that they were made aware at any point of the events that occurred.  Plaintiff also fails to assert that there was a "prior pattern of similar incidents."  Plaintiff does not alleged that events like those of January 4, 2017 had occurred before, or that his constitutional rights had been similarly violated previously.  Plaintiff here has provided only a bare assertion that defendants were "responsible" for the "operations in

11

the STU." Accordingly, Plaintiff has failed to allege facts to demonstrate that the defendants were deliberately indifferent to his constitutional rights, and he has not successfully alleged a failure to supervise claim. Plaintiff's failure to supervise claim is therefore dismissed without prejudice.

      ii. Failure to Train

A failure to train claim requires a supervisor's deliberate indifference, generally through establishment of "a pattern of similar constitutional violations by untrained employees." *Wright v. City of Philadelphia*, 685 F. App'x 142, 147 (3d Cir.), *cert. denied sub nom Wright v. City of Philadelphia, Pa.*, 138 S. Ct. 360 (2017) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Under a narrow range of circumstances, however, "a single constitutional violation *may* amount to deliberate indifference." *Id.* at 147 (emphasis added) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown,* 520 U.S. 397, 409 (1997). This type of "single-incident liability" occurs where, "in light of the duties assigned to specific officers or employees the need for more of different training is so obvious, and the inadequacy so likely to result in the violation of constitutional right that the policymakers [. . .] can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (alteration in original); *see also Brown*, 520 U.S. at 409 (reiterating same standard).[1] Caution, however, is required: "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident", and

---

[1] Although both *Canton* and *Brown* address municipal liability, the Third Circuit has held that "the standard of individual liability for supervisory public officials will be no less stringent than the standard of liability for the public entities that they serve." *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989). Thus, the case law applicable for municipal liability is similarly applicable to the liability here for state officials in their individual capacities.

courts cannot engage in "an endless exercise of second-guessing municipal employee-training programs." *Wright*, 685 F. App'x at 147 (quoting *Canton*, 489 U.S. at 392).

Here, Plaintiff does not allege a pattern of similar constitutional violations. As discussed above, Plaintiff does not allege that this type of conduct ever occurred prior to January 4, 2017. That leaves the comparatively rare "single-incident" theory of liability. The allegations here are too vague to permit a plausible inference that this single incident stemmed from supervisors' deliberate indifference. The complaint merely names Gary Lanigan, Sherry Yates, Ryan O'Day, and John Doe #1 and states that they were responsible for training the S.O.G. officers. The complaint makes no other reference to the officers' training and states no facts about the training that the officers did or did not receive. *See Fairview Ritz Corp. v. Borough of Fairview,* No. 09-875, 2013 WL 5946986, at *24-25 (D.N.J. Nov. 6, 2013) (finding Plaintiff could not support a failure to train claim where he failed to state facts supporting single incident liability, such as "facts detailing specific deficiencies in training programs"); *see also Gaymon v. Esposito*, No. 11-4170, 2013 WL 4446973, at * 15 (D.N.J. Aug. 16, 2013) (dismissing Plaintiffs' failure to train claim where there were "no facts in Plaintiffs' Complaint that allege anything whatsoever about the nature and extent of training" and "no factual allegations in their Complaint regarding training, or more specifically, facts regarding the existence or lack thereof of a training program [. . .] [and] the nature of the deficiencies of said program").

The failure to train claim is therefore dismissed without prejudice.

### iii.   Injunctive Relief

Finally, Plaintiff seeks an injunction requiring that the "prison-type riot tactics" employed by S.O.G. officers cease immediately "due to their adverse effects on treatment and the residents' progress." A request for injunctive relief must be directed against a defendant in his or her official

capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989). Although the Complaint refers only to the defendants in their individual capacities, I will overlook that technical defect and deem it to be directed against them in their official capacities for purposes of the injunctive claim only.

A plaintiffs seeking prospective injunctive relief "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs.*, 148 F.Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). A plaintiff must be able to show that a real and imminent harm will occur; a mere possibility of future harm will not suffice. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 300-01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025, 185 L. Ed. 2d 886 (2013).

Although the complaint sufficiently alleges an injury that occurred on January 4, 2017, it does not sufficiently allege that the plaintiff is at risk of similar harm in the future. He alleges that he is in daily fear, but the fact remains that this fear is based on what is alleged as an isolated event. The "prison-type riot tactics" used on January 4, 2017 are not alleged to have occurred before or since. The necessary allegation of a real and immediate threat warranting injunctive relief is absent. *See ZF Meritor, LLC*, 696 F.3d at 300-01.

Plaintiff's claim for an injunctive relief is therefore denied.

## V.    CONCLUSION

For the foregoing reasons, the Complaint is permitted to proceed in part, but dismissed in part, pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Plaintiff's excessive force claim against John Doe #2 and Plaintiff's illegal strip search claim against John

Doe #3 will both be permitted to proceed under § 1983, as will the parallel claims under the New Jersey Civil Rights Act.  Plaintiff's claims against Gary Lanigan, Sherry Yates, Ryan O'Day, and John Doe #1 for failure to supervise and failure to train is dismissed for failure to state a claim. The claim of a "hostile restrictive environment" is dismissed for failure to state a claim.  Finally, Plaintiff's request for injunctive relief is dismissed. These dismissals are without prejudice to the submission within 90 days of a proposed amended complaint that remedies the deficiencies identified above.

The summons and complaint cannot be served on unidentified individuals. Therefore, Plaintiff shall have 90 days to submit an amended complaint identifying John Doe #2 and John Doe #3.  If plaintiff cannot discover the identities of John Doe #2 and John Doe #3, he may submit to the Court a request for a subpoena under Federal Rule of Civil Procedure 45(c)(2), describing a prison official who he believes has the ability to produce documents that would identify John Doe #2 and John Doe #3. He may also supply any information that would help identify those defendants—for example, where they were on duty at the time of the strip search.

DATED: October 19, 2018

KEVIN MCNULTY
United States District Judge